# UNITED STATES DISTRICT COURT
for the
## Southern District of Texas

| | |
|---|---|
| ZUHA AL KAYYALI, MALKA HAMAD, and AYAD ALGAYYALI<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY<br>3801 Nebraska Avenue NW,<br>Washington, DC 20016<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES<br>20 Massachusetts Ave NW,<br>Washington, DC 20008<br><br>U.S. DEPARTMENT OF STATE<br>2201 C Street NW,<br>Washington, DC 20037<br><br>Alejandro N. Mayorkas, in his official capacity as Acting Secretary of Homeland Security<br><br>UR JADDOU, in her official capacity as Acting Director of United States Citizenship and Immigration Services<br>Antony Blinken, in his official capacity as Secretary of State<br><br>and<br><br>Lisa Johnson, in her official capacities as the consular officials responsible for issuing immigration visas in Lebanon,<br><br>Defendants. | Civil Action No.: <u>4:24-cv-227</u> |

**PETITION FOR WRIT OF MANDAMUS AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs-Petitioners ("Plaintiffs"), appearing individually under pseudonyms, respectfully bring this Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief to compel Defendants-Respondents ("Defendants") to issue and/or reissue Plaintiffs' visas. In support thereof, Plaintiffs allege as follows:

**NATURE OF ACTION**

Plaintiff, ZUHA AL KAYYALI, is a United States citizen who is living in the US. away from her parents since 2012.

1. ZUHA AL KAYYALI waited the legal period to become US. Citizen, once she become a US citizen she petitioned for her parents.

2. On or about November 2018 ZUHA AL KAYYALI filed an I-130 Petition for Alien Relative on behalf of her mother and father—all of whom are residents of Lebanon (collectively, the "Plaintiff Parents"). The petition was approved on or about April 2020 Petitioner received email to complete the required documents and information as part of the process prior to the interview.

3. Since on or about 2019 since the petition was files, Plaintiff have diligently pursued the lengthy and rigorous immigrant visa application process, which entails, inter alia, filing immigrant visa applications, paying several thousand dollars in filing and processing fees and related costs, and undergoing security screenings, visa interviews, and medical examinations.

4. In November 2021, the Plaintiff Family was interviewed by the Consular Section of the U.S. Embassy in Beirut, Lebanon ("Consulate").

interview Date/Time:  NOVEMBER 04, 2021, at 08:45 AM

Interview Location: AWKAR, LEBANON

Father AYAD ALGAYYALI NVC case   **BRT2020610002**

Father AYAD ALGAYYALI Invoice ID:   **IVSCA00001260880**

Mother, petitioner, Malka Hamad Invoice ID **IVSCA00001123949**

Mother, Petitioner, Malka Hamad, NVC Case Number: **BRT2020563001**

5. Plaintiffs Malka Hamad and Ayad Algayyali has 6 US children who live and reside in the USA. And also, they have 15 grandchildren who lives and reside in the US. The family of

6. Defendants' refusal to issue the visas deprives Plaintiffs of their rights under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 11001 *et seq.*, and its implementing regulations, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555, 706, as well as agency policy.  This inaction also has separated Plaintiffs from their loved ones and exposed them to serious, prolonged, and imminent threats to their lives and well-being.  It has cost the family thousands of dollars and caused significant disruptions in their educations and careers.  The financial, physical, and emotional stresses that Plaintiffs have suffered as a result of Defendants' failure to act have exacted a significant toll on the family and will

not be relieved until the visas are issued, as required by law.

1. A court may grant mandamus relief if (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see also Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016).

2. Here, Plaintiffs clearly meet all three of these criteria. Plaintiffs have fully complied with all of the statutory and regulatory requirements in the visa application process and were told that their applications had been approved. Accordingly, they have a clear right to the issuance of the visas. Defendants have unreasonably failed to issue the approved visas, in dereliction of their non-discretionary duties, and despite providing Plaintiffs assurances to the contrary shortly before they abruptly and arbitrarily changed course. Plaintiffs have no alternative means to obtain relief.

3. Based on the foregoing, Plaintiffs are also entitled to relief under the APA, which authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Defendants' failure to issue the visas constitutes agency action unlawfully withheld or unreasonably delayed, entitling Plaintiffs to relief.

4. Accordingly, Plaintiffs are entitled to a writ of mandamus and/or order (1) declaring that Defendants' continued failure to issue Plaintiffs' visas violates the

APA, the INA, agency regulations, and agency policy; and (2) directing Defendants to issue Plaintiffs' immigration visas forthwith.

## THE PARTIES

1- Plaintiff Zuha Al Kayyali is a U.S. citizen who resides in Houston, Texas. Since on or about August 2012.

2- Plaintiff Ayad AlGayyali is the father of Zuha Al Kayyali. He was born in Iraq in 1965 and is Iraq national who resides in Lebanon.

3- Plaintiff Malka Hamad is the mother of Zuha Al Kayyali. She was born in Lebanon in 1954 and she has Iraqi Passport and she resides in Lebanon.

4- Defendant Department of Homeland Security ("DHS") is an agency of the United States Government. DHS is responsible for implementing and enforcing the INA.

5- Defendant Alejandro Mayorkas is the Secretary of DHS and is the senior official of DHS. He is sued in her official capacity.

6- Defendant United States Citizenship and Immigration Services ("USCIS") is a component of DHS responsible for, *inter alia*, adjudicating immigrant visa petitions filed on behalf of foreign nationals seeking to immigrate to the United States. USCIS plays an integral role in the immigrant visa application and adjudication process.

7- Defendant Ur Jaddou is the Director of USCIS and is the senior official of USCIS. She is sued in his official capacity.

8- Defendant Department of State is an agency of the United States Government. State has an integral role in the immigrant visa application and adjudication

process.

9- Defendant Antony John Blinken is the Secretary of State and is the senior official of State. He is sued in his official capacity.

10- Defendants Lisa Johnson the consular officials employed by the

U.S. Department of State who are responsible for issuing U.S. immigration visas in Lebanon.

## JURISDICTION AND VENUE

1. This case arises under the United States Constitution; the INA, 8 U.S.C. § 1101 *et seq.*; and the APA, 5 U.S.C. § 701 *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1361, and 2201–2202.

2. There exists an actual and justiciable controversy between Plaintiffs and Defendants requiring resolution by this Court. Plaintiffs have no adequate remedy at law.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## BACKGROUND

**I.   Statutory and Regulatory Framework**

4. Immigration based on a foreign national's familial relationship with a United States citizen or lawful permanent resident (LPR) is the primary method by which foreign nationals may seek to immigrate to the United States.

5. Under the INA, family-sponsored visas may be issued to, *inter alia*, the Parents of U.S. citizens. the United States citizen a qualifying familial relationship exists between the petitioner and the beneficiary. 8 C.F.R. § 204.1(a)(1).

6. Filing a Form, I-130 establishes a "priority date," which is used to

determine when the beneficiary of a petition—along with any derivative beneficiaries—is permitted to move forward with the visa application process. 8 C.F.R. § 204.1(c). Because the number of individuals seeking to immigrate under the family-sponsored preference system far outpaces the number of visas available in any given year, visas are issued chronologically according to petition priority dates.

7. If an I-130 petition is approved, USCIS forwards the approved petition to the Department of State, National Visa Center (NVC). Once the priority date becomes "current"—indicating that a visa is available based on the beneficiary's preference status—the beneficiary is able to begin the process of formally applying for a visa by submitting a DS-260 Online Immigrant Visa and Alien Registration Application with the NVC.

8. After completing the DS-260 application, filing supporting documentation, completing a medical examination, and paying applicable fees, a beneficiary is interviewed by a consular officer at the beneficiary's applicable U.S. embassy or consulate.

9. During the interview, the applicant executes Form DS-260 by swearing to or affirming its contents and signing it before a consular officer. *See* 22 C.F.R. § 42.67. The Department of State website instructs that "[a]t the end of your

immigrant visa interview at the U.S. Embassy or Consulate, the consular officer will inform you whether your visa application is approved or denied." The Immigrant Visa Process, U.S. Department of State, Bureau of Consular Affairs, *available at* https://travel.state.gov/content/visas/en/immigrate/immigrant-process/interview/after.html.

10. Once "a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and its implementing regulations, the consular officer must either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law." 22 C.F.R. § 42.81(a). The Department of State Foreign Affairs Manual (FAM) further explains that "[o]nce an application has been executed, the consular officer must either issue the visa or refuse it. A consular officer cannot temporarily refuse, suspend, or hold the visa for future action. If the consular officer refuses the visa, he or she must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available." 9 FAM § 504.1-3(f).

11. If the consular officer determines that a visa should be issued, the officer is required to arrange the appropriate visa documentation and sign and seal the immigrant visa, consistent with the requirements set forth in 22 C.F.R. § 42.73. "The immigrant visa shall then be issued by delivery to the immigrant or the immigrant's authorized agent or representative." *Id.* § 42.73(d).

12. Conversely, if the consular officer determines that the visa should be refused, the officer must have a basis for refusal that is "specifically set out in the

law or implementing regulations." 22 C.F.R. § 40.6.  The officer also must comply with the refusal procedure outlined in 22 C.F.R. § 42.81(b), which mandates, in relevant part, that the "consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available."[1]

13.     If a consular officer determines that additional information is required from an applicant or that a Security Advisory Opinion—known as "administrative processing"—is necessary to determine an applicant's eligibility, the officer must deny the application under INA § 221(g), pending future consideration once additional information is received or administrative processing is concluded.  *See* 9 FAM 504.11-3(B)(2)(a) ("If, after interviewing the applicant, you decide that an advisory opinion is necessary, you must first refuse the alien under INA 221(g).")  The FAM categorizes Section 221(g) refusals issued for the purpose of conducting administrative processing as "Quasi-Refusal Cases."  9 FAM 504.11-3(B).

When a "quasi-refusal" is issued pursuant to INA § 221(g), the applicant must be notified both orally and through a refusal letter, which is required to "[e]xplicitly state the provision of the law under which the visa was refused." 9 FAM 504.11-3(A)(1).

14.     In the event that a visa is refused, the application must be reconsidered if "within one year from the date of refusal [the applicant] adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e).

## II.   Factual Background

### A.   Plaintiffs' Visa Applications

1-   On or about September 2017, Plaintiff Zuha Alkayyali filed an I-130 Petition on behalf of her parants.

2-   On or about 2019 the petition was approved, since the petition was approved, Plaintiffs have diligently pursued the lengthy and rigorous immigrant visa process, which entails, *inter alia*, filing immigrant visa applications, paying thousands of dollars in filing fees and related costs, and undergoing security screenings and medical examinations.

> On or about November 2021, the parents were interviewed by the Consular Section of the U.S. Embassy in Beirut, Lebanon. After the interview, the Consulate requested more paperwork from Plaintiffs. Right after the request, all the information was provides, Plaintiffs submitted the requested materials.
>
> Since then, many communications and request have been submitted, with no hope, the cases been on the shelves and no one is doing nay review
>
> The parents further applied for temporary visa to visit their children and grandchildren in the US. As its way cheaper option then for the family of over 25 people to travel which may cost about $50,000 just for the airfare tickets, the Visa got denied because they have pending IR5 visa.

> Until now at no time have Defendants explained the reason Plaintiffs' visas are purportedly in administrative processing, and this claim is contradicted by other information provided by Defendants. Beginning in at least 2019 up to the date of the filing of this complaint, the State Department website continues to indicate that.

### III. Defendants' Inaction is Unreasonable and Unlawful

3-      Plaintiffs contend that Defendants' failure to issue the family's approved visas is a direct result of the unlawful application of the Second Executive Order, an application that should immediately be enjoined. Plaintiffs' visa applications had been completed, executed, and approved, and their visas were about to be issued.

### IV. Plaintiffs Have Been Harmed By Defendants' Inaction

4-      As an initial matter, Plaintiffs have incurred significant expenses as a result of the delay. The Plaintiff Family spent thousands of dollars traveling to the Consulate in Lebanon and renting an apartment in Tripoli, Lebanon for six months while they waited for Defendants to issue their visas. As noted above, Plaintiff John Doe # 1 resigned from his job because of Defendants' assurances that the visas would be issued, costing the family many thousands of dollars in lost wages and other benefits. He has been unable to find new employment and cannot return to his previous employment because he retired based on Defendants' assurances. These losses are not recoverable from Defendants.

5-      Additionally, Plaintiffs suffered substantial emotional trauma and threats to their health and well-being as a result of the delay. On the basis of Defendants' assurances that their visas would be issued within a matter of weeks, the family's four children left school and university in the middle of the school year, significantly disrupting their educations and resulting in a lost school year that they are now having to repeat.

6-      The family also faced extreme anxiety, insecurity, and fear of

deportation during their time in Lebanon. The family was forced to overstay their Lebanese visas because of Defendants' delay, and for over four months Plaintiffs waited anxiously in Lebanon, knowing that they could be deported at any time.

7- Having now returned to Syria, the Plaintiff Family is exposed to the threat of violence on a daily basis. Although they are in a relatively stable location

compared to other areas of the country, car bombings and other violence are still common, and the ongoing civil war renders any security tenuous.

8-      Upon returning to Syria, John Doe # 2, the eldest son, was able to enroll in school and obtain an educational waiver from conscription into the Syrian army through March 2018.  However, as the war continues, the Syrian government has progressively been tightening the rules surrounding such exemptions and has been applying those rules far more stringently.  There is no guarantee that John Doe # 2 will be able to renew his waiver or allowed to leave the country, and the family fears that he could be forced into military service.

9-      Plaintiffs have suffered enormous stress and emotional trauma not only from their disappointment and uncertainty regarding their visas, but also from their concerns for the well-being and safety of their family.  Moreover, all Plaintiffs face indefinite separation from their close family members in the United States, creating irreparable harm by further delay.  Such separation has had a significant emotional impact on Plaintiffs, heightened by the ambiguity surrounding when this separation will end.

## V.     Plaintiffs Are Entitled To Relief

10-     District courts have mandamus jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. §1361. Moreover, a district court reviewing agency action under the APA may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "Agency action" includes, in relevant part, "an agency

rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

11- The APA requires administrative agencies to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555. The INA's implementing regulations further provide that "[w]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of INA and the implementing regulations, the consular officer *must* either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law." 22 C.F.R. 42.81 (emphasis added). Similarly, State Department policy makes clear that "[o]nce an application has been executed, the consular officer must either issue the visa or refuse it. A consular officer cannot temporarily refuse, suspend, or hold the visa for future action." 9 FAM 504.1-3(f). Under State Department policy, "[t]here are no exceptions to th[is] rule." 9 FAM 504.1-3(h).

12- Here, Defendants adjudicated Plaintiffs' visa applications and determined with in 30 days of the service of this action, that the visas would be issued. That decision, which was communicated to Plaintiffs, triggered Defendants' obligation to issue the visas. Indeed, the Consulate provided Plaintiffs with written confirmation of this arrangement: Plaintiffs were to submit their passports and could expect to receive their visas within one week.

13- Defendants' failure to act violates the APA, 5 U.S.C. § 706(1), the INA and its implementing regulations, and agency policy. Because Defendants have failed to carry out their duties and obligations under the law and governing regulations, thereby depriving Plaintiffs of their clearly established rights, Plaintiffs are entitled to a writ of mandamus and/or relief under the APA directing Defendants to issue their visas forthwith.

**FIRST CLAIM FOR RELIEF**
**28 U.S.C. § 1361**
**Writ of Mandamus to compel officers and agencies of the United States to perform a duty owed to Plaintiffs.**

14- The above paragraphs are incorporated herein by reference.

15- The INA and the regulations issued pursuant to it impose on Defendants a non-discretionary duty to issue visas once the decision to issue them has been made. The APA further requires agencies to "proceed to conclude a matter presented" to the agency "within a reasonable time." 5 U.S.C. § 555(b).

16- The issuance of Plaintiffs' visas is a nondiscretionary duty imposed upon Defendants by statute and/or regulation. Plaintiffs have a clear right to the issuance of the visas.

17- Defendants have failed and refused to issue Plaintiffs' visas. This failure and refusal have caused and continue to cause Plaintiffs harm, including.

separating Plaintiffs from their family members and exposing them to serious, prolonged, and imminent threats to their life and well-being.

18- Plaintiffs have brought this action because Plaintiffs have no other means to compel Defendants to perform the duties Defendants owe to them. Plaintiffs have exhausted all available remedies.

19- Based on the foregoing, Plaintiffs are entitled to a writ of mandamus directing Defendants to issue the visas forthwith.

## SECOND CLAIM FOR RELIEF
### Administrative Procedure Act, 5 U.S.C. § 706(1): Agency Action Unreasonably Delayed or Unlawfully Withheld

20- The above paragraphs are incorporated herein by reference.

21- The INA and the regulations issued pursuant to it impose on Defendants a non-discretionary duty to issue visas once the decision to issue them has been made. The APA further requires agencies to "proceed to conclude a matter presented" to the agency "within a reasonable time." 5 U.S.C. § 555(b).

22- Here, Defendants have failed to issue Plaintiffs' visas within a reasonable time after deciding to issue them and this failure constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of 5U.S.C. § 706(1).

23- This failure has caused and continues to cause Plaintiffs harm including separating Plaintiffs from their family members and exposing them to serious, prolonged, and imminent threats to their life and well-being.

24-    Plaintiffs have brought this action because Plaintiffs have no other means to compel Defendants to act. Plaintiffs have exhausted all available remedies.

25-    Based on the foregoing, Plaintiffs are entitled to an order directing Defendants to issue Plaintiffs' visas forthwith in accordance with the APA.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully ask this Court to issue judgment in their favor and against Defendants, and to grant the following relief:

A.    Issue a writ of mandamus and a temporary, preliminary, and permanent injunction directing Defendants to effectuate the issuance of Plaintiffs' visas within fourteen (14) days of the issuance of the writ;

B.    Issue an order and a temporary, preliminary, and permanent injunction pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(1), directing Defendants to effectuate the issuance of Plaintiffs' visas within fourteen (14) days of the issuance of the order;

C.    Declare that Defendants' continued failure to issue Plaintiffs' approved visas constitutes agency action unlawfully withheld or unreasonably delayed;

D.    Decide the action on an accelerated schedule in light of the ongoing harm Plaintiffs are suffering as a result of Defendants' refusal to act;

E. Retain jurisdiction over this action and any attendant proceedings until Defendants have in fact finally affixed Plaintiffs' visas to their passports, tendered those passports to Plaintiffs, and communicated that fact to the Court;

F. Award Plaintiffs reasonable attorney's fees and expenses for the cost of this action; and

26- Grant such further relief as this Court deems just and proper

Respectfully submitted,
/s/ Dalya Alabbassi
Texas Bar Number:24113524
Alabbassi Law office
Dalya Alabbassi, Esq.
9950 Westpark Dr. Ste 102
Houston Texas 77063
832-304-7866 ext 1001
dalabbassi@gmail.com
info@alabbassi.net

### Certificate of Service

I certified that Pursuant to Federal Rules of Civil Procedure, Rule 4(i)(2), On 01/22/2024 I mailed summons and complaints of the above document against the Defendants or its personnel in their official capacity by registered or certified mail, to:

1- U.S. Department of Homeland Security,
   TO: 2707 Martin Luther King Jr. Ave SE, Washington, DC 20528-0485. AND
   OGC@hq.dhs.gov.

2- U.S. Department of State Executive Office, Office of the Legal Adviser, Suite 5.600, 600 19th Street NW., Washington DC 20522.
   legal-fo-support-dl@state.gov
   • Antony Blinken, in his official capacity as Secretary of State
   and
   • Lisa Johnson, in her official capacities as the consular officials responsible for

    issuing immigration visas in Lebanon,

3- United States Citizenship and Immigration Services 5900 Capital Gateway Drive Mail Stop 2120 Camp Springs, MD 20588-0009

UR JADDOU, in her official capacity as Acting Director of United States Citizenship and Immigration Services

4- United States of America
   c/o Alamdar S. Hamdani United States Attorney
   1000 LOUISIANA SUITE,
   2300 Houston, Texas 77002

5- U.S Attorney General
United States Attorney General
U.S. Department of Justice
10th & Constitutional Avenue,
N.W. Washington, D.C. 20530
    *USATXS-CivilNotice@usa.doj.gov*

6- Civil Process Clerk
United States Attorney's Office
1000 Louisiana, Suite 2300 Houston, Texas 77002

7- The Honorable Alejandro Mayorkas
Secretary of Homeland Security
Washington, DC 20528
    *Also emailed to:* *uscis.serviceofprocess@uscis.dhs.gov*